UNITED STATES DISTRICT COURT　　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
GLOBAL AERO LOGISTICS INC., and　　　　　:
ATA AIRLINES, INC.,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　:
　　　　- against -　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:　　　08-CV-1845 (JG) (RER)
AIR LINE PILOTS ASSOCIATION,　　　　　　:
INTERNATIONAL,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant.　　　　:
---------------------------------------------------------------- X

A P P E A R A N C E S :

　　FORD & HARRISON LLP
　　　　100 Park Avenue, Suite 2500
　　　　New York, NY 10017
　　By:　Elana Gilaad

　　NORMAN A. QUANDT
　　　　1275 Peachtree Street, NE, Suite 600
　　　　Atlanta, GA 30309

　　DOUGLAS W. HALL
　　　　1300 19th Street, N.W., Suite 700
　　　　Washington, DC  20036

　　Attorneys for Plaintiff Global Aero Logistics, Inc.

　　HAYNES AND BOONE LLP
　　　　153 East 53rd Street, Suite 4900
　　　　New York, NY 10022
　　By:　Lenard M. Parkins

　　ARTHUR T. CARTER
　　　　901 Main Street, Suite 3100
　　　　Dallas, TX 75202

KENRIC D. KATTNER
    1221 McKinney, Suite 2100
    Houston, TX 77010

Attorneys for Plaintiff ATA Airlines, Inc.

COHEN, WEISS AND SIMON LLP
    330 West 42nd Street
    New York, NY 10036-6976
By:    Peter D. DeChiara
    Eyad Asad
    Attorneys for Defendant

JOHN GLEESON, United States District Judge:

    Plaintiffs Global Aero Logistics Inc. ("Global") and ATA Airlines, Inc. ("ATA") brought this action on May 7, 2008. The complaint seeks an injunction against defendant Air Line Pilots Association, International ("ALPA"), the collective bargaining representative of ATA's flight deck crewmembers, prohibiting it from prosecuting grievances asserted by ALPA before the three-member System Board of Adjustment provided for in ALPA's collective bargaining agreement with ATA. Plaintiffs contend that the grievances raise representation disputes over which the National Mediation Board ("NMB") has exclusive jurisdiction pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq*. The complaint also seeks a declaration that ALPA's grievances implicate a representation dispute within the exclusive jurisdiction of the NMB.

    On the same day they filed the complaint, plaintiffs moved for a preliminary injunction. A briefing schedule was set, and the motion was argued on May 22, 2008. At oral argument, both sides agreed that the applications for injunctive and declaratory relief could both be reviewed as a matter of law on the current record. Accordingly, with the express consent of both sides, I considered each side's arguments as though I had before me cross-motions for judgment on the pleadings. The relief sought by plaintiffs was granted in a brief order entered

on May 27, 2008, which promised an opinion to follow. This memorandum constitutes that opinion.

BACKGROUND

A.  *The Collective Bargaining Agreement Between ATA and ALPA*

ATA is an airline engaged in scheduled passenger service within the United States and to Mexico, charter operations, and flying for the U.S. military through the Air Force's Air Mobility Command ("AMC") program. Its fleet consists of 29 aircraft: 12 Boeing 737-800s, 6 Boeing 757-200s, 4 Boeing 757-300s, 3 Lockheed L-1011-500s, and 4 McDonnell-Douglas DC-10-30s. McMillin Dec. at ¶¶ 3-4. ATA is a subsidiary of Global.

ATA's pilots first unionized in 1993 and were represented by the International Brotherhood of Teamsters ("IBT"). In 1999, ALPA replaced IBT as the pilots' bargaining representative, and ALPA and ATA negotiated a collective bargaining agreement (the "CBA") that became effective in July 2002. McMillin Decl. at ¶¶ 5-6.

Section 1 of the CBA, entitled "Recognition and Scope," provides among other things that the CBA "shall be binding upon any successor, including without limitation, any merged Company[1] or companies, assignee, purchaser, transferee, administrator, receiver, executor, and/or trustee of the Company . . ." CBA § 1.D. It further sets forth provisions that "shall apply in the event of a successor transaction in which the successor is an Air Carrier or is an affiliate of another Air Carrier," including rules governing the integration of pilot seniority lists and negotiation of an "integrated" CBA. § 1.E. Grievances pursuant to Section 1 of the CBA are subject to expedited and binding arbitration before a three-member ATA-ALPA System Board of Adjustment (the "System Board"). McMillin Decl. at ¶¶ 7-8; CBA § 1.G. Each party

---

[1] The CBA defines "Company" as ATA. CBA § 1.A.

3

selects one member of the System Board, and the third member is selected from a list included in the CBA. McMillin Decl. ¶ 17.

Global is not a signatory to the CBA, but it is a party to a document entitled "Letter 1" and "Letter of Agreement" (referred to here as "LOA 1"), a side letter appended to the CBA. LOA 1 states that Global will not establish another airline that is an "alter ego" of ATA or acquire another airline to be operated by Global or ATA which would result in the furlough of an ATA crewmember. Any grievances brought pursuant to the LOA 1 are likewise to be brought before the System Board for final and binding arbitration. LOA 1, at 2.

B.   *The World Holdings Acquisition by Global*

In April 2007, Global announced its agreement to acquire World Holdings, the parent holding company of World Airlines ("World") and North American Airlines ("NAA"). The acquisition was completed on August 14, 2007. McMillin Decl. at ¶ 10. World provides charter transportation services for international passenger and cargo carriers, international freight forwarders, and international leisure tour operators. World is also a member of the AMC Alliance Team, and is the largest commercial carrier of U.S. military personnel and their dependents. It operates a fleet of approximately 17 wide-body, long-range aircraft. McMillin Decl. ¶ 11. NAA provides international scheduled service passenger flying between the United States and Latin American and African destinations. It performs charter flying and military airlifts, also as part of the AMC Alliance Team. NAA has a fleet of 10 aircraft. McMillan Decl. ¶ 12.

IBT represents the cockpit crewmembers of both World and NAA, having represented World for the past 25 years and NAA since January 2004. World and IBT have entered into a series of CBAs, the most recent of which went into effect on March 2006 and does

4

not become amendable until March 2009.  NAA has a separate CBA with IBT, which was ratified by the NAA pilots in April 2008.  It will not become amendable until 2012.  McMillan Decl. at ¶¶ 13-14.

C.     *The ALPA Grievances*

In February 2008, ALPA filed two grievances arising out of Global's acquisition of World Holdings.  The first (the "Section 1.E Grievance") alleges that under Section 1.E of the CBA, Global's acquisition of World and NAA entitles ATA crewmembers to seniority integration and an integrated collective bargaining agreement covering ATA, World and NAA.  The grievance seeks damages and an order compelling ATA and Global to participate in the binding arbitration procedure provided for by the CBA.  McMillin Decl. at ¶ 15.  Pl.'s Ex. B.

At the same time, ALPA filed a grievance against Global, alleging a violation of LOA 1 (the "LOA 1 Grievance").  ALPA asserts that Global established World and NAA as alter egos of ATA.  By doing so, ALPA further claims, Global has diverted work from ATA crewmembers, resulting in the extension of the furloughs of ATA Crewmembers.  ALPA seeks to bar Global from diverting ATA flying opportunities to World and North American; to require Global to compel ATA to recall all furloughed ATA crewmembers; and to compensate the pilots for monetary damages arising from the lost flying opportunities and extended furloughs.  McMillin Decl. at ¶ 16; Pl.'s Ex. C.

D.     *The ATA Bankruptcy and The Settlement Agreement in the Bankruptcy Court*

On April 2, 2008, ATA filed for protection under Chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the Southern District of Indiana.  It shut down its flight operations the following day with no advance notice to ALPA or its pilots.  McMillin Decl. at ¶ 19; De Chiara Decl.

In light of ATA's bankruptcy filing, ALPA sought to accelerate the scheduling of the arbitration hearings on its two grievances, which were originally scheduled for August 2008. When ATA and Global would not agree to change the date, ALPA filed an adversary proceeding against Global and ATA in the bankruptcy court to compel arbitration at an earlier date. The parties resolved to proceed by executing a document entitled "Settlement Agreement," in which ALPA agreed to dismiss the adversary proceeding in exchange for Global and ATA's commitment to proceed with the arbitration on dates earlier than August. Specifically, the Settlement Agreement provided that "the System Board shall hold hearings on one or both of the Grievances on June 2-3, 2008" and "if the hearings on both Grievances are not completed on June 2-3, 2008, the hearings shall continue on" additional dates to be selected after determining the availability of the arbitrator. Def.'s Ex. A. ¶¶ 7-8. On April 17, 2008, the Bankruptcy Court issued an order stating that the terms of the Settlement Agreement were effective immediately and that the court would retain jurisdiction to enforce its terms and to resolve any disputes arising it. Def.'s Ex. A.

In the Settlement Agreement, each party reserved "its position on whether the Grievances should be heard together or sequentially and, if sequentially, in what order and on what dates, with the decision on these issues . . . to be made by the System Board." *Id.* at ¶ 6. The parties also reserved "any and all rights with respect to all issues (other than the stipulated dates for the commencement and continuation of the hearing on the grievances) that may be raised before the System Board or before the Bankruptcy Court concerning disputes among the parties." *Id.* at 10.

E.  *Post-Settlement Agreement Activity*

After entering into the Settlement Agreement, both Global and ATA continued to participate in the processing of the grievances. The parties agreed that if the hearing were not completed on June 2-3, it would resume on June 18-19, 2008. *See* McMillan Decl. ¶ 21; Def.'s Ex D. Global and ATA responded to ALPA's request for production of documents relevant to the grievances, and they requested documents from ALPA. McMillin Decl. ¶ 21; Def.'s Ex. E, F. The parties also discussed the location of the arbitration hearing. Def.'s Ex. E, F. On April 15-16, 2008, ATA discussed with ALPA the effects of ATA's shutdown on its pilots. In summarizing the outcome of that bargaining session, ATA wrote that while ALPA's other grievances would be resolved in the bankruptcy process, "ALPA will proceed to expedited arbitration on the scope grievances [*i.e.*, the Section 1.E and LOA 1 grievances] filed prior to the shutdown of the airline." Def.'s Ex. J at 2.

## DISCUSSION

A.  *The Injunctive Relief Standard*

In order to obtain a preliminary injunction, the movant must show (a) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See, e.g., Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

ALPA contends that the Norris-LaGuardia Act (the "NLGA") bars plaintiffs from pursuing injunctive relief because the NLGA deprives federal courts of jurisdiction to issue "any restraining order or temporary or permanent injunction in a case involving or

E.  *Post-Settlement Agreement Activity*

After entering into the Settlement Agreement, both Global and ATA continued to participate in the processing of the grievances. The parties agreed that if the hearing were not completed on June 2-3, it would resume on June 18-19, 2008. *See* McMillan Decl. ¶ 21; Def.'s Ex D. Global and ATA responded to ALPA's request for production of documents relevant to the grievances, and they requested documents from ALPA. McMillin Decl. ¶ 21; Def.'s Ex. E, F. The parties also discussed the location of the arbitration hearing. Def.'s Ex. E, F. On April 15-16, 2008, ATA discussed with ALPA the effects of ATA's shutdown on its pilots. In summarizing the outcome of that bargaining session, ATA wrote that while ALPA's other grievances would be resolved in the bankruptcy process, "ALPA will proceed to expedited arbitration on the scope grievances [*i.e.*, the Section 1.E and LOA 1 grievances] filed prior to the shutdown of the airline." Def.'s Ex. J at 2.

## DISCUSSION

A.  *The Injunctive Relief Standard*

In order to obtain a preliminary injunction, the movant must show (a) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See, e.g., Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

ALPA contends that the Norris-LaGuardia Act (the "NLGA") bars plaintiffs from pursuing injunctive relief because the NLGA deprives federal courts of jurisdiction to issue "any restraining order or temporary or permanent injunction in a case involving or

E.  *Post-Settlement Agreement Activity*

After entering into the Settlement Agreement, both Global and ATA continued to participate in the processing of the grievances. The parties agreed that if the hearing were not completed on June 2-3, it would resume on June 18-19, 2008. *See* McMillan Decl. ¶ 21; Def.'s Ex D. Global and ATA responded to ALPA's request for production of documents relevant to the grievances, and they requested documents from ALPA. McMillin Decl. ¶ 21; Def.'s Ex. E, F. The parties also discussed the location of the arbitration hearing. Def.'s Ex. E, F. On April 15-16, 2008, ATA discussed with ALPA the effects of ATA's shutdown on its pilots. In summarizing the outcome of that bargaining session, ATA wrote that while ALPA's other grievances would be resolved in the bankruptcy process, "ALPA will proceed to expedited arbitration on the scope grievances [*i.e.*, the Section 1.E and LOA 1 grievances] filed prior to the shutdown of the airline." Def.'s Ex. J at 2.

## DISCUSSION

A.  *The Injunctive Relief Standard*

In order to obtain a preliminary injunction, the movant must show (a) irreparable harm, and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See, e.g., Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

ALPA contends that the Norris-LaGuardia Act (the "NLGA") bars plaintiffs from pursuing injunctive relief because the NLGA deprives federal courts of jurisdiction to issue "any restraining order or temporary or permanent injunction in a case involving or

growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101. I disagree with this contention. "While this jurisdiction-stripping provision generally admits of only limited exception, the Supreme Court has held that the NLGA does not preclude courts from enforcing the mandates of the RLA." *In Re Nw. Airlines*, 483 F.3d 160 (2d Cir. 2007); *see also Burlington N. R.R. v. Bhd. of Maint. of Way Employees*, 481 U.S. 429, 445 (1987); *Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Execs. Ass'n*, 491 U.S. 490, 514 ("The prohibition of the NLGA must give way when necessary to enforce a duty specifically imposed by another statute."). The RLA mandates that representation disputes be handled by the NMB. 42 U.S.C. § 152 Ninth. Accordingly, actions that contravene that mandate can be lawfully enjoined by a district court.

   1.   *Irreparable Harm*

Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Javaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (citing *Jackson Dairy*, 596 F.2d at 72). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." *Reuters*, 903 F.2d at 907 (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989)); *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112 (2d Cir. 2005), *Rodriguez v. DeBuono*, 175 F.3d 227, 234-35 (2d Cir. 1999). The movant is required to establish not a mere possibility of irreparable harm, but that it is *"likely* to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (emphasis in original).

The Second Circuit has held that a party forced to arbitrate a dispute that is beyond the purview of its arbitration agreement suffers irreparable harm. *Barrack, Rodos & Bacine*, 2008 WL 759353 at *5; *see also Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d

8

125, 129 (2d Cir. 2003) (citing *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 985 (2d Cir. 1997) ("[T]he time and resources [plaintiff] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the [arbitration agreement] or the Arbitration Act.")). ALPA misconceives Second Circuit law in contending that plaintiffs cannot show irreparable harm because they may prevail in the arbitration, and can collaterally attack the arbitration in this Court if they do not. When a party is forced to arbitrate an issue that is not arbitrable, the expenditure of time, money, resources and effort amounts to irreparable harm irrespective of the outcome of the proceeding.

      2.     *Likelihood of Success on the Merits*

Under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, representation disputes, including disputes over which union, if any, represents a class of employees, fall within the exclusive jurisdiction of the National Mediation Board ("NMB"). *See Western Airlines, Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301, 1302 (1987) ("[D]isputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board."). The NMB adjudicates representational disputes by first determining whether in fact the carriers have combined their operations so as to constitute a "single carrier." *See Ford v. Air Line Pilots Ass'n*, 268 F. Supp.2d 271, 281 (E.D.N.Y. 2003) ("The Board's exclusive jurisdiction extends to determine whether two related carriers, such as a parent and subsidiary, are functionally a single carrier."); *see also Air Line Pilots Ass'n v. Texas Int'l Airlines,* 656 F.2d 16 (2d Cir. 1981). If the NMB decides that the merger has created a "single carrier," it then addresses which bargaining agent will represent the class of employees.

Here, ALPA's grievances are within the exclusive jurisdiction of NMB because the grievances implicate a representation dispute. Both of ALPA's grievances -- that (1) pursuant to Section 1.E of the ATA-ALPA CBA, pilot seniority lists must be integrated and a new CBA must be negotiated to cover the pilots of ATA, NAA, and World; and (2) pursuant to LOA 1, ALPA is entitled to monetary damages because Global established alter egos of ATA, thus diverting work opportunities from ATA to NAA and World -- invoke NMB jurisdiction because ALPA is seeking to enforce terms of its CBA with ATA against the pilots of World and NAA. Yielding to the contractual demands of the CBA would have a direct impact on the rights of the pilots of World and NAA.

In *Independent Union of Flight Attendants v. Pan American World Airways, Inc.* (*IUFA*), 664 F. Supp. 156 (S.D.N.Y. 1987), Pan Am flight attendants sought to enforce the terms of their collective bargaining agreement after Pan Am acquired Ransome Airlines. The flight attendants filed a grievance, claiming that their collective bargaining agreement gave them the right to the work being performed by the Ransome flight attendants. The Pan Am flight attendants' collective bargaining agreement provided that any dispute about this issue was to be resolved by arbitration, but Pan Am refused to arbitrate. The court characterized the flight attendant turf battle as a "representation dispute" within the exclusive jurisdiction of the NMB:

> [W]hat may be characterized as a 'minor' dispute over the interpretation of a contract may also implicate concerns which are representational in nature. Where the issues thus overlap, a jurisdictional problem arises. The proper course for a court to follow in such circumstances is to allow the National Mediation Board "alone to consider the post-merger problems that arise from existing collective bargaining agreements." (quoting *Texas International Airlines*, 717 F.2d at 164).

*IUFA*, 664 F. Supp. at 158.

As in *IUFA*, ALPA casts its grievances here as contract interpretation issues and purports to seek enforcement of the terms of the CBA and the LOA 1. But a decision on contractual issues involving the work-related rights of employees after a merger can necessarily implicate representational concerns. *See IUFA*, 664 F. Supp. at 158 ("While this is not a traditional dispute over representation, the unrepresented flight attendants who worked Ransome's flights in the past and who now service the Pan Am Express flights have 'a representational stake' in the matters raised . . . That only one union is involved does not, as previously noted, negate the existence of a representation dispute"); *see also Air Line Pilots Ass'n v. Texas Int'l*, 656 F.2d 16 (2d Cir. 1981) (claim by employees of one carrier that work on an acquired carrier should be assigned to them raised a representation dispute).

Furthermore, there is no distinction between a claim for damages and a demand to work when it comes to characterizing the nature of the dispute. In its grievances, ALPA also seeks monetary damages for the lost wages that the ATA pilots will incur as a result of work being "diverted" to NAA and World pilots. But claims for damages are proper only before the NMB. *See Flight Engineers' Int'l Ass'n v. Pan American World Airways, Inc*. ("*FEIA*"), 716 F. Supp. 110 (S.D.N.Y.), *aff'd,* 896 F.2d 672 (2d Cir. 1989) (finding the distinction between a demand for work versus a claim for damages not determinative). In *FEIA*, a second case arising from the Pan Am acquisition of Ransome, Pan Am's training instructors filed a claim for lost wages as a result of the reassignment of their work to Ransome training instructors. The court found that "even though a representational dispute may be murky, its presence, together with the traditionally narrow role of the courts in enforcing the RLA, requires the conclusion that the Court lacks subject matter jurisdiction over the action." *Id.* at 113.

If the System Board were to decide ALPA's grievances in the defendant's favor, the work schedules and opportunities of the NAA and World pilots would be affected. Thus, the grievances implicate those pilots' representation rights. It is of no consequence that NAA and World would be present at the System Board arbitration, as ALPA asserts they would be, for it is the character of the dispute as representational that requires its adjudication before the NMB.

In sum, plaintiffs have demonstrated that the asserted grievances constitute a "representation dispute" within the exclusive jurisdiction of the NMB. Accordingly, I conclude that the plaintiffs will likely prevail on the merits.

B.  *The Effect of the Bankruptcy Court Order and Settlement Agreement*

ALPA contends that in bringing this action, ATA and Global violated the terms of the Settlement Agreement, in which, ALPA claims, ATA and Global agreed to the System Board's arbitration of ALPA's grievances. ALPA further claims that, in any event, the plaintiffs by their conduct waived their right to judicial review of substantive arbitrability. I disagree with both contentions.

ALPA's grievances arising out of Global's acquisition of World Holdings were filed in early February 2008. In mid-March, the parties selected the neutral System Board member and inquired of him about his availability during the month of August for the arbitration hearing. However, ATA's sudden bankruptcy in early April altered the landscape significantly, and the purpose of ALPA's adversary proceeding in the bankruptcy case was to accelerate the scheduling of the arbitration hearing dates in light of the altered landscape. The parties resolved that dispute by settlement and agreed to meet for an arbitration hearing on June 2-3, 2008. In

12

doing so, however, neither party waived its right to challenge in federal court the substantive jurisdiction of the System Board to resolve the grievances.

Courts, not arbitrators, resolve challenges to "substantive arbitrability." *See AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability -- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance -- is undeniably an issue for judicial determination."). ALPA argues that plaintiffs' failure to specifically reserve in the Settlement Agreement the right to have a court determine substantive arbitrability amounts to a waiver of that right. I disagree. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*, 475 U.S. at 649; s*ee also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.").

Here, the parties did not "clearly and unmistakably" agree that the arbitrability of the grievances would be handled by the arbitrator. An explicit reservation of the right to challenge arbitrability is not required to preserve that right; indeed, the absence of language in the Settlement Agreement concerning this issue supports the view that a court should decide the question of arbitrability. *See Mitsubishi Motors, Inc. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983))). The Settlement Agreement does not expressly address the issue at all, let alone clearly and unmistakably. And by agreeing upon dates for the System Board proceedings but expressly reserving "any and all rights with respect to all issues (other than the stipulated

13

dates for the commencement and continuation of the hearing on the Grievances) that may be raised before the System Board or before the Bankruptcy Court concerning disputes among the parties," Def.'s Ex. A. ¶10, the more persuasive reading of the Settlement Agreement is that Global and ATA reserved, rather than relinquished, the argument they advance here.

ALPA argues that the Settlement Agreement's use of the phrase "the System Board *shall* hold hearings on one or both Grievances on June 2-3" requires the conclusion that Global and ATA forfeited their right to argue that only the NMB had jurisdiction over the grievances. But the adversary proceeding that culminated in the Settlement Agreement was brought to litigate the *timing* of the System Board proceedings, and the Settlement Agreement sought to resolve that dispute. Its language should be considered in that light. Particularly in view of the broad reservation of rights discussed above, an agreement that arbitration "shall" occur on June 2-3 cannot reasonably be construed as a clear, unmistakable agreement to arbitrate the question of substantive arbitrability.

ALPA further contends that the plaintiffs waived their right to challenge the issue of substantive arbitrability because they made arrangements with ALPA to exchange documents and arrange the location of the hearing. While it is true that a party may be found to have waived its objection to arbitrability if it has participated extensively in arbitration proceedings without asserting its objection in timely fashion, *see, e.g.*, *ConnTech Dev. Co. v. University of Conn. Educ. Prop., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996), the plaintiffs' activity here does not amount to a clear and unmistakable waiver of their jurisdictional objections. *See, e.g. Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.*, No. 07-10649, 2008 WL 463720 (S.D.N.Y. Feb. 18, 2008) (no waiver of jurisdictional objections even when party submitted question of arbitrability to the arbitrator, participated in case management conferences, consented to venue, produced

14

discovery, and served pre-hearing witness and exhibit lists); *see also Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, No. 08-CV-2152 (PKL), 2008 WL 759353 (S.D.N.Y. Mar. 20, 2008) (no clear and unmistakable evidence that parties intended to have arbitrator decide arbitrability even when objecting party failed to seek court intervention at an earlier time).

Finally, ALPA claims that the plaintiffs' contentions should have been raised in the bankruptcy court, and that their failure to do so is evidence of bad faith. The bankruptcy court's order approving the settlement retained jurisdiction to enforce the terms of the Settlement Agreement and to resolve any dispute arising from its terms. However, as discussed above, the purpose of the Settlement Agreement is clear: it provided for earlier hearing dates for the System Board arbitration. The agreement did not address the substantive arbitrability of ALPA's grievances, and I see no bad faith in plaintiffs' resort to this Court for a ruling that ALPA's grievances raise issues within the exclusive jurisdiction of the NMB.

## CONCLUSION

Because the NMB is vested with exclusive jurisdiction to adjudicate ALPA's grievances, and the plaintiffs have satisfied the requirements for injunctive relief, the requested injunction was granted on May 27, 2008. ALPA is enjoined from prosecuting its grievances before the ATA-ALPA System Board.

John Gleeson, U.S.D.J.

Dated: June 17, 2008
        Brooklyn, New York